accordingly we are of opinion that the evidence was not sufficient to justify the verdict.

The judgment is reversed, and the cause remanded, for a new trial.

———◆◆———

GASTON E. BROWNING, Plaintiff in Error, *v*. THE STATE; Defendant in Error.

1. CRIMINAL TRIAL: CHANGE OF VENUE.—Where a change of venue is ordered in a criminal cause, the law does not require, or authorize the clerk of the court, from which the venue is changed, to transmit to the court into which the cause has been removed, the original papers in the cause. He is only authorized to send a certified copy of the original papers, and of the minutes and records of the court, containing the orders and proceedings of the court in relation to the cause.

2. SAME.—The Circuit Court, into which a cause has been removed by a change of venue, must try the defendant upon a certified copy of the indictment, and not upon the original.

3. CONSPIRATORS: ACTS AND DECLARATIONS, WHEN EVIDENCE.—The fact that several parties are jointly indicted for the same offence, does not render the acts and declarations of one, evidence against the others.

4. CONSPIRACY: HOW PROVEN.—The existence of a conspiracy, or combination to commit a crime, must, like all other facts, be proven by competent evidence. The admissions or confessions of one of several alleged conspirators, are incompetent evidence as against the others; to prove the criminal combination, it must be established by evidence *aliunde*.

5. CONSPIRATORS: DECLARATIONS OF, HOW ADMISSIBLE.—It is a universal rule, that, before the acts or declarations of one of several alleged conspirators can be admitted in evidence against the others, proof sufficient, in the opinion of the court, to establish, *prima facie*, the existence of the conspiracy, must be adduced. 1 Greenl. Ev. § 111; 2 Starkie, Ev. 327; Whart. Am. Cr. Law, 261, 262.

6. SAME.—The rule recognized in England, that, under peculiar and urgent circumstances, the acts and declarations of one of a company of conspirators, may, in the discretion of the judge, be admitted in evidence against the others, before sufficient proof is given of the conspiracy—the prosecutor undertaking to furnish such proof in a subsequent stage of the cause—is difficult to be reconciled with the universally admitted principle of evidence, or the great object of the law, to secure a fair and impartial trial; and, *it seems*, would not be observed by the courts of this state.

7. SAME.—Where several persons have combined for an illegal purpose, any act

done by one of them in pursuance of the original concerted plan, and in furtherance of the common design, is the act of the whole; and the declarations of one, whether verbal, or in writing, being acts in themselves, or accompanying and explaining other acts, and therefore part of the *res gestæ*, are also admissible in evidence against the others; but these acts and declarations must have been performed, and made during the pendency of the criminal enterprise, and before its completion or abandonment, or else, being no part of the *res gestæ*, but the mere relation of a past transaction, they cannot be admitted in evidence, to charge the other confederates.    1 Phil. Ev. 200; 1 Greenl. Ev. §§ 111, 280, 233; Roscoe, Crim. Ev. 80; 2 Starkie, Ev. 326; Whart. Am. Crim. Law, 161, 162.

8. REASONABLE DOUBT: WHAT IS.—The following instruction, given on behalf of the state, was held to be erroneous, viz: "A reasonable doubt, is not *probability* only, or conjecture, or supposition. The doubt which should properly induce a jury to withhold a verdict of guilty, should be such a doubt as would reasonably arise from the testimony before them." If there be a *probability* of the prisoner's innocence, he should be acquitted.

9. INSTRUCTIONS, ABSTRACT: COURT NOT BOUND TO GIVE.—The court is not bound to give, as instructions to the jury, mere abstract propositions of law, which are more likely to confuse, than to enlighten them; and for this reason, the following instruction asked for by the prisoner, was properly refused, viz: "Whenever the probability of guilt is of a definite and limited nature, whether in the proportion of one hundred to one, or one thousand to one, or in any other limited ratio, it cannot be safely made the ground of conviction."

IN error from the Circuit Court of Holmes county.    Hon. E. G. Henry, judge.

John D. Browning and Gaston E. Browning were jointly indicted in the Circuit Court of Sunflower county, for the murder of one John W. Neal.    Upon the application of the prisoners, the venue was changed to the county of Holmes.    At the November term, A. D. 1854, of the Circuit Court of Holmes county, the defendant, Gaston E. Browning, was tried, the court having allowed the prisoners to sever in the trial.    Gaston E. Browning, the plaintiff in error, was found guilty of murder, by the jury.    He moved in arrest of judgment, and also for a new trial, which motions were overruled; and the court thereupon pronounced the sentence of death upon him.    The ground upon which the motion in arrest of judgment was made, is fully stated in the opinion of the court.    Numerous exceptions, during the progress of the trial, were taken by the prisoner to the introduction, as evidence, to the jury, of the acts and declarations of John D. Browning.

VOL. I.—42

The testimony was entirely circumstantial, and is very volumi-nous; the only facts necessary to be stated, are as follows:—

That, on Sunday evening, the 23rd day of July, 1854, the de-ceased, John W. Neal, left the plantation of his employer, James Y. McNeil, between twelve o'clock, M. and one o'clock, P. M., with the avowed intention of crossing the Yazoo river, at John D. Browning's, and going to a Mr. Pool's, and returning home that night; a distance of about eighteen miles in going and returning. He was not seen afterwards by any of the witnesses, until on the Tuesday evening following, being the 25th of July, when his dead body was discovered floating down the Yazoo river.

John D. Browning was present when the body was discovered; and a witness was permitted to relate the acts and declarations of John D. Browning, then performed and made, and which tended to implicate him in the murder of Neal. John D. Browning was a justice of the peace, and as such, officiated the next day as coroner, in holding an inquest over the body of Neal, and his con-duct and declarations on that occasion were admitted in evidence against the prisoner.

On Tuesday, the 25th day of July, previous to the discovery of the body of Neal, John D. Browning and the prisoner, and a third party, searched the river for it, and John D. Browning's conduct and declarations at that time were also admitted in evidence. After the arrest of John D. Browning and prisoner, the conduct and declarations of John D. Browning during the pendency of his trial before the committing court, were also admitted in evidence: so were declarations made by him about three weeks before the death of Neal. These declarations were not direct confessions of guilt, but were intended to show a knowledge of the circumstances of the murder, inconsistent with innocence; and also to show a motive.

There was no proof of a conspiracy or combination between the prisoner and John D. Browning, to murder Neal. The prisoner was the son of John D. Browning, and lived at his house at the time of Neal's death.

The following instructions were given on behalf of the state:—

1. When a conviction depends upon circumstantial testimony

the legal test of its sufficiency for that end, is its power to satisfy the understanding and conscience of the jury.

2. It is sufficient, if the circumstances produce moral certainty, to the exclusion of every reasonable doubt. Circumstantial evidence may rise so high in the scale of belief, as to generate full conviction; and when, after due caution, this result is reached, the law authorizes its ministers to act on it.

3. A reasonable doubt, authorizing an acquittal, must arise from the testimony; and if the jury are satisfied, from the testimony, of the guilt of the prisoner, beyond a reasonable doubt, so arising, they must convict. A reasonable doubt, is not *probability* only, or conjecture, or supposition: the doubt which should properly induce a jury to withhold a verdict of guilty, should be such a doubt as would reasonably arise from the testimony before them.

4. The jury are the sole judges of the weight of evidence given, and in estimating its weight, they may take into consideration the relative situation of the witnesses, from whom the evidence is derived, towards the parties, or any other proven circumstance, by which their evidence may be influenced or biassed.

The prisoner asked the following instructions; all of which were given, except the ninth.

1. That, of all kinds of evidence, that of extrajudicial and casual declarations, is the weakest and most unsatisfactory. Such words are often spoken without serious intention; and they are always liable to be mistaken and misunderstood, and their meaning is liable to be misrepresented and exaggerated; a hearer is apt to clothe the ideas of the speaker, as he understands them, in his own language: and by this translation the real meaning must often be lost; and a witness, who is not entirely indifferent between the parties, will frequently, without being conscious that he does so, give too high a coloring to what has been said.

2. The necessity for caution, cannot be too strongly and emphatically impressed, where particular expressions are detailed in evidence, which were used at a remote distance of time, or to which the attention of the witness was not particularly called. Such evidence is fabricated easily, and contradicted with difficulty; and more especially is such caution to be observed, where the party

making such declarations, is proven habitually to have expressed his meaning awkwardly and obscurely; provided such fact be proven to the satisfaction of the jury.

3. In the application of circumstantial evidence to the determination of a case, the utmost caution and vigilance should be used; it is always insufficient, where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true; for it is the actual exclusion of every other hypothesis, which invests mere circumstances with the force of proof.

4. That, in order to justify the inference of legal guilt, from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt.

5. That the circumstances alleged as the basis of any legal inference, must be proved, beyond doubt, to exist; and must be shown to be strictly and indubitably connected with the main facts to be proved.

6. That, before the jury can rightly find the prisoner guilty, on circumstantial proof, that proof must be so absolute, conclusive, positive, and certain, as to exclude from their minds every other reasonable supposition or belief.

7. That, to justify a conviction on circumstantial evidence, it is necessary that the circumstances should be such as to exclude, to a moral certainty, any other supposition but that of the prisoner's guilt.

8. Wherever circumstantial evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of the hypothesis of guilt, rather than another, such evidence cannot amount to legal proof of guilt, however great the probability may be.

9. Whenever the probability of guilt is of a definite and limited nature, whether in the proportion of one hundred to one, or one thousand to one, or in any other limited ratio, it cannot safely be made the ground of conviction.

10. If the jury have a reasonable doubt, whether Neal committed suicide, or was murdered, they must acquit.

Browning *v*. The State.

11. If the jury have a reasonable doubt as to the reality of the connection between the circumstances proved and the murder of Neal; or, if they have any reasonable doubt as to the defendant being the murderer, or one of them—if they should believe that there were more than one—they must acquit.

12. If the jury have a reasonable doubt, whether said Neal came to his death by strangling or hanging on the one hand, or by drowning, or the blows inflicted on his head, on the other, they must acquit.

13. If there is any fact established by the evidence, irreconcilable with the hypothesis of the guilt of the prisoner, the jury must acquit, although all the other facts and circumstances of the case, may coincide and agree with the hypothesis of guilt, to the minutest extent.

14. In weighing the effect of circumstantial evidence furnished by the conduct of a person charged with crime, great caution should be exercised. An innocent man, finding himself in a situation of difficulty, and perhaps from the circumstances of the case, in a situation of danger, may adopt a line of conduct which bears with it the presumption of guilt.

*Thos. Botters*, and *J. Z. George*, for plaintiff in error.

1. The court erred in forcing the prisoner to try on a copy of the indictment. He was entitled to be tried on the original. The law authorizing a change of venue in civil cases, directs that the original shall be transmitted. Hutch. Code, 849. This act was passed in 1823. The act afterwards passed in 1831, authorizing a change of venue in criminal cases, makes no provision as to the mode in which it shall be done. It does not direct what shall, or shall not be transmitted to the court into which the cause is removed. This omission cannot be accounted for, except upon the ground that the mode provided in the act in civil cases, was intended to be pursued in criminal trials.

2. The court erred in permitting the conduct and declarations of John D. Browning, to be detailed in evidence against the prisoner. It is impossible to conceive upon what principle these declarations were admitted. The fact that they were jointly in-

dicted, will not authorize their admission; see 2 Stark. Ev. 329; Wharton, Am. Cr. Law, 326. The rule on this subject seems to us to be so well understood, and so well defined, that it is impossible to mistake it. Before the acts and declarations of one can be admitted in evidence against another, the following conditions must be complied with: First, that there was a conspiracy or combination existing between them for the commission of the crime charged: Second, that the acts and declarations were done and made in pursuance of the criminal enterprise, and in furtherance of its object: and, Third, that they should have been done and made in point of time, subsequent to the formation of the conspiracy, and previous to its completion or abandonment, or in other words, *pending* the criminal enterprise. See 1 Greenl. Ev. §§ 98, 111, 233; 3 Ib. 94; Rosc. Crim. Ev. 76, 77, 78, 79; Breese, R. 268; 2 Burr's Trial, 338, 339; 7 Grat. R. 641.

None of these conditions were complied with. In the first place, there was not a single iota of proof that there was a criminal combination between the Brownings to murder Neal. There is no evidence tending to show this fact, unless it be the declarations of John D. Browning. These were incompetent to show this fact, for the reason that they could not be admitted at all, until after, and upon the condition the conspiracy was proven. Upon the second point, the acts and declarations were inadmissible, as not having been done and made in pursuance of the original concerted plan to murder Neal, (admitting it to be proven.) Not all the acts and declarations of a conspirator are admissible against his associates, even when made pending the criminal enterprise. The rule is restricted to the admission of those acts and declarations done in pursuance of the concerted scheme, and in furtherance of its object. What one might say or do, although criminal in itself, yet if it be outside of the conspiracy, is not admissible against the others.

But upon the third point, the reason for the exclusion of the evidence is, if possible, more obvious than in the others. All the acts and declarations of John D. Browning, which were admitted in evidence, were done and made, after the death of Neal; except one conversation, which took place about three weeks previously. Some of them occurred even after their arrest. They cannot possi-

bly be said to have been made and done during the pendency of the criminal enterprise to murder Neal, for this had been accomplished by his death. See 1 Greenl. § 111, and authorities above cited.

3. The court evidently erred in granting the third instruction asked for the state. It is substantially copied from the syllabus in *Cicely's case*. The syllabus substitutes the word "probability," for "possibility," as contained in the court's opinion. It may be true, that a *possibility* of the prisoner's innocence may exist, there being a reasonable doubt of his guilt, but to say that there is a *probability* of his innocence, and yet no reasonable doubt of his guilt, is manifestly absurd. If authority be used on this point, let Webster's Dictionary decide the matter. This instruction was prejudicial to the prisoner : under it, he was entirely excluded from the benefit of a reasonable doubt.

4. The court erred in refusing the ninth instruction asked for by defendant. This, as a proposition of law, is undeniable, and is copied from the most learned and philosophical law writer known to the profession, (1 Stark. Ev. 574); besides, it announces a vital principle, in the application of circumstantial evidence, and one recognized by this court, in *Algheri's case*, 3 Cushm. 389. By that case, the doctrine is distinctly asserted, that if the evidence only raises a definite and finite probability in favor of the hypothesis of guilt, it is insufficient. The probabilities in favor of guilt must be indefinite, and beyond all human calculation, otherwise, it is insufficient. This is all that is announced in the instruction, and the refusal to give it, is equivalent to charging the reverse of it to be the law.

5. The court erred in refusing to grant a new trial. On this point, counsel reviewed the evidence, but it is unnecessary to set out their argument, inasmuch as the court expressed no opinion on that point.

*D. C. Glenn*, attorney general, for the state.

1. Upon the testimony, this case presents a clearer case of guilt than the case of Cicely or the case of McCann. In fact, the conclusion of guilt is irresistible.

2. The admission of the evidence of John D. Browning, was justi-

fied by well-established principles, as proof of *facts* in the cause, and not as evidence of themselves to fix guilt on Gaston Browning —as indicatory evidence, tending to prove the main fact in issue. The authorities relied on, are *McCann's case*, 13 S. & M. 471, and cases cited, which was maturely weighed, and deliberately decided, by the whole court. This was not hearsay evidence. On each point I rely on 1 Greenl. §§ 100, 108; 1 Stark. §§ 563, 567; *Kuthler's case*, 10 S. & M. 226, 47, 54, 55, 56, 57, 58, 59, and note; also, 62, 63, 64, 65.

3. The charge refused was calculated to confuse and mislead the jury, and moreover it propounds a rule of numerical and mathematical expression to be applied to moral probabilities, which is not safe, nor is it sanctioned by authority. 6 Wills, Cir. Ev.; 1 Stark. close of volume.

The cause was argued orally by the attorney general and *J. Z. George.*

SMITH, C. J., delivered the opinion of the court.

John D. Browning and Gaston E. Browning, were jointly indicted in the Circuit Court of Sunflower county, for the murder of John Neal. Upon the application of counsel of prisoners, the venue was changed to Holmes county, in which the trial took place. The parties charged were tried separately; and Gaston E. Browning, whose case is now before us, was convicted of murder and sentenced accordingly.

After the verdict, the prisoner moved in arrest of judgment: his motion being overruled, he moved for a new trial; which being also refused, exception was taken to the judgment, on the motion for a new trial, and the evidence embodied in the bill of exceptions.

The objections now urged, apply to various proceedings of the Circuit Court.

1. It is insisted, that the court erred, in overruling the motion in arrest of judgment.

A certified transcript " of all the orders, records and papers, including the indictment," in conformity with the order changing the venue, was deposited with the clerk of the Circuit Court of

Holmes county. When the prisoner was about to be put upon his trial, he demanded the production of the original indictment found by the grand jurors of Sunflower county, and objected to being tried on the copy contained in the transcript. The objection was overruled, and the trial was proceeded with. This was the ground relied on in support of the motion.

The propriety of this action of the court, depends exclusively upon the construction to be given to the statute, in regard to the change of venue in criminal cases.

The statute on this subject, (Hutch. Dig. 1007, art. 6,) is entirely silent, as to the mode in which an order for a charge of venue in prosecutions shall be carried into effect. It provides simply, that it shall and may be lawful, under a prescribed state of circumstances, for any circuit or criminal court, to grant an order for the change of venue. The act in reference to a change of venue in civil cases directs that the original papers shall be transmitted to the court into which the cause, by the order changing the venue, has been removed,—which are to be accompanied by a descriptive list of those papers. But we cannot hold, in the absence of any intimation by the legislature to that effect, that these directions are to be applied to criminal cases in which the venue has been changed, without authority for that purpose. If not conferred by the legislature, it would clearly be illegal for the clerks of the Circuit Courts to part with the original papers or records pertaining to a prosecution therein pending. All that a clerk could do in such cases,—and we must infer that it was all the legislature intended to be done,—is to transmit to the clerk of the court, into which the cause has been removed, a perfect transcript of all the original papers in the cause, and of the minutes or records of the court containing the orders and proceedings of the court in relation to the same, properly certified under the seal of his office.

In *Green's case*, (not yet reported,) there was a change of venue; and he was, as in the case at bar, tried upon a certified transcript of the indictment. The exception based upon that fact, was not noticed in the opinion of this court affirming the judgment; but, on a petition for re-argument, the question was maturely considered; and it was held to be no ground for reversing the judg-

ment.   Our subsequent examination of the subject, has confirmed our conviction of the correctness of the decision then made.

2. It is next objected, that the court erred, on numerous occasions, in the admission of evidence adduced in support of the prosecution.

The cases, or instances, in which it is alleged there was an erroneous admission of testimony in behalf of the state, are very numerous; and it is deemed unnecessary to notice them in detail, as we can fully understand the questions presented by the exceptions to the various items of testimony, by a statement of the general character of the evidence excepted to, and the grounds of objection.

The Brownings—father and son—were jointly indicted for the murder of. John Neal.   They were tried separately; and the younger Browning was first put on his trial.   During the examination of the witnesses, many persons called for the prosecution, were permitted to testify as to the conduct and acts, occurring after the death of Neal, of the elder Browning; as to statements made by him after the perpetration of the alleged homicide; and in relation to conversations, in which he detailed facts which had happened long anterior to the date of the offence, as well as facts occurring after the deed was perpetrated.   All of this testimony was objected to by the prisoner, as incompetent evidence, on the trial of the issue before the jury.

Two positions are assumed in support of the exception to the admission of this testimony.

1. It is assumed, that the testimony referred to was illegally admitted, because, as it is insisted, no proof whatever was offered tending to establish a conspiracy or combination between the plaintiff in error and the elder Browning.

It is not to be questioned, that the mere fact that these parties were jointly indicted for the murder of Neal, would not make the declarations or acts of Browning the elder evidence in the cause. The principle upon which they could alone be admitted as evidence " is, that the act or declaration of one, is that of both united in one common design; a principle which is wholly unaffected by the consideration of their being jointly indicted.   2 Stark. Ev. 329.

The act or declaration of one wrong doer, is no evidence to affect any other person; for it is merely *res inter alios acta;* unless where it is proved that several persons have entered into the same criminal design; in such case, the acts or declarations of any one of them in furtherance of the common object, are not to be considered *res inter alios,* with regard to the rest of them; they are all identified with each other in the prosecution of the scheme; "they are partners," says Starkie, "for a bad purpose, and as much mutually responsible, as to such purpose, as partners in trade are for more honest pursuits; they may be considered as mutual agents for each other."

The existence of a conspiracy, or of a combination for the commission of a crime, is a fact, which, like all other facts, when it is material to be proved, can only be established by competent evidence. The declaration of a stranger in regard to it would be mere hearsay; unsustained by any of the legal tests of truth. The mere assertion of a stranger, that a conspiracy existed amongst others, to which he was not a party, would be clearly inadmissible, and it is equally clear, that the confession of the party making the assertion, that he was a party to the conspiracy, would not make the assertion evidence against strangers.

Hence, although in cases in which crime has been jointly committed by several persons, when once a conspiracy or combination has been established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise, is considered the act or declaration of all, and is evidence against all; a foundation must first be laid by proof, sufficient in the opinion of the court to establish *primâ facie* the existence of the combination, or to be laid before the jury, as tending to establish such fact, before the acts or declarations of any of the conspirators or accomplices can be given in evidence to charge the others. This, as the general rule, seems to be universally recognized. Greenl. Ev. § 111; 2 Stark. Ev. 327; Whar. Am. Cr. L. 261, 262; and cases cited by the respective authors.

Tested by this rule, it is manifest that the court erred in admitting the acts and declarations of the elder Browning, as evidence

in the cause; there having been no foundation laid by proof, establishing or tending to establish the existence of a concert or combination between him and the party on trial.

But an exception to the rule above laid down, confessedly, at least in its application, of not very ancient date, is recognized by the English Courts.

Starkie, says: " The rule that one man is not to be affected by the acts or declarations of a stranger, rests on the principles of the purest justice; and although the courts, in cases of conspiracy, have, out of convenience, and on account of the difficulty in otherwise proving the guilt of the parties, admitted the acts and declarations of strangers to be given in evidence, in order to establish the fact of a conspiracy, it is to be remembered, that this is an inversion of the usual order, for the sake of convenience; and that such evidence is, in the result, material so far only as the assent of the accused to what has been done by others, is proved." 2 Stark. Ev. 329.

This exception, with some modification, has been sanctioned by Greenleaf, in his work on Evidence. He lays it down, that sometimes, for the sake of convenience, under peculiar and urgent circumstances, the acts or declarations of one of a company of conspirators are admitted in evidence before sufficient proof is given of the conspiracy; the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. Greenl. Ev. 127. This rests in the discretion of the judge; and he adds, " that care must be taken that the acts and declarations, thus admitted, be those only, made and done during the pendency of the criminal enterprise, and in furtherance of its objects."

It is difficult to reconcile this exception to the rule, with the universally admitted principles of the law of evidence, or with the great object of all laws regulating the examination of witnesses and the introduction of evidence, which is, to secure a fair and impartial trial of the question at issue. But conceding that the exigencies of the public required the recognition of this principle, and that it will be observed by this court; let us see whether under it the action of the Circuit Court can be justified.

The offence charged, if committed at all, was unseen by all, save

the parties engaged in its perpetration. The whole transaction was shrouded in secrecy. The very fact of the homicide, as well as the question, who were the perpetrators of the deed, depended entirely upon indirect or circumstantial evidence. The charge, as laid in the indictment, presupposes the co-operation of at least two persons in the commission of the offence. It may hence, well be conceded, that peculiar and urgent circumstances existed in the cause, which authorized the application of the exception to the rule above stated, if any combination of circumstances could authorize a departure from the prescribed mode. But it should ever be borne in mind, that no man can be asserted to be legally guilty of an offence, unless his guilt shall have been established according to the forms and principles of the law; and that in no case should a disregard of either the law itself or its established forms be tolerated, from any considerations of difficulty in the conviction of offenders, or from the supposed manifest guilt of the accused.

According to some adjudged cases, very slight evidence of the existence of a conspiracy or combination, in which the accused is implicated, is sufficient to let in proof of the acts and declarations of his accomplices, done or made pending the conspiracy, and in furtherance of its objects. In the case at bar, judging from the record, no attempt whatever seems to have been made by the prosecution, to prove the existence of any concert or combination between any persons, in the perpetration of the alleged offence. In fact, no evidence had been offered to prove a *corpus delicti*, before the first witness called for the prosecution was allowed to testify in regard to the acts and declarations of the elder Browning. It does not appear that any reason or cause was assigned for the admission of this evidence, before a proper foundation was laid. Indeed, for aught that appears of record, the acts and declarations of the elder Browning were received and treated as original evidence in the cause, competent and pertinent to the issue to be tried. Every presumption, however, is in favor of the legality of the proceedings of courts. We are bound, therefore, to presume—in the absence of any thing to the contrary appearing of record—that testimony in relation to those acts and declarations, was admitted by the judge in the exercise of a wise discre-

tion; and that in allowing it to go the jury, the conditions of the law were strictly complied with.

But there is an insurmountable objection to the admission of the testimony of many of the witnesses for the prosecution, in relation to certain acts and declarations of the elder Browning. As this objection would apply at all stages of the cause, and be equally tenable, if there had been proof *aliunde* connecting the plaintiff in error with a conspiracy for the murder of Neal, it will be considered in reference to the second ground taken in support of the exception to the admission of evidence.

2. It is insisted, that the court erred, in overruling the prisoner's objection to the testimony of certain witnesses for the prosecution, who were allowed to depose as to the acts and declarations of the elder Browning, not done or made pending the existence of a combination for the murder of Neal, and in furtherance of such object; but which occurred after the commission of the offence. The objection applies to portions of the testimony of many of the witnesses who were examined on the trial.

It is not our purpose to determine whether, upon all the evidence, as submitted to the jury, the plaintiff in error was guilty of the crime charged; but it will not be controverted, that without the evidence in reference to the acts and declarations of Browning, the elder, there is not proof sufficient to connect him with the murder. The proofs, therefore, derived from the conduct and statements of the former, and which, in the estimation of the jury, were conclusive of the prisoner's guilty connection with the transaction, were important and material.

We have above stated the ground upon which the acts or declarations of one conspirator, or one accomplice—where a crime has been committed by several persons—are admitted in evidence to charge the others; and the rule in reference to the question under consideration, is too well settled to admit of doubt.

"It is an established rule," says Phillips, "that where several persons are proved to have combined together for the same illegal purpose, any act done by one of the party in pursuance of the original concerted plan, and with reference to the common object, is, in the contemplation of the law, the act of the whole party. It

follows, that any writings, or verbal expressions, being acts in themselves, or accompanying and explaining other acts, and therefore part of the *res gestœ*, and which are brought home to one conspirator, are evidence against the other conspirators; provided it sufficiently appear that they were used in furtherance of a common design." 1 Phil. Ev. 200. And further: "But where words or writings are not acts in themselves, nor part of the *res gestœ*, but a mere relation of some part of the transaction, or as to the share which other persons have had in the execution of a common design, the evidence is not in its nature original. It depends on the credit of the narrator, who is not before the court; and therefore it cannot be received." Id. 201.

Acts performed, or declarations made, after the consummation of the object for which the parties combined, can, upon no principle, be considered a part of the *res gestœ*; much less can an act done, or a declaration made, after the execution of a common design, be regarded as performed or made in the prosecution of such design. The boundary between those acts and declarations of conspirators and accomplices which are admissible in evidence, and those which are not, is as clearly defined as the rule itself, upon which, in any case, they are admitted. Greenleaf, in terms, lays it down, that the evidence in respect to the acts and declarations of conspirators and accomplices, must be confined to acts and declarations made or done "during the pendency of the criminal enterprise, and in furtherance of its objects;" and that, "after the enterprise is at an end, whether by accomplishment or abandonment, is not material; no one is permitted, by any subsequent act or declaration of his own, to affect others. His confession, therefore, subsequently made, even though by the plea of guilty, is not admissible in evidence, as such, against any but himself." 1 Greenl. Ev. 127, § 111; Ib. 280, § 233. The same rule is recognized by the approved writers on the Law of Evidence. Roscoe, Cr. Ev. 80; 2 Starkie, Ev. 326; Am. Cr. Law, 161, 162.

Let it be assumed, then, that there was sufficient evidence to establish the common guilt of the prisoner and the elder Browning: and hence that the prisoner was properly chargeable by the acts and declarations of the latter, done pending the combination, and

in the prosecution of its objects: but, tried by this rule, it is manifest that the court erred, in several instances, in the admission of testimony in relation to the acts and declarations of the elder Browning.   Many of these acts and declarations, deposed to by the witnesses, were done and made, after the perpetration of the alleged offence.   In some instances, statements of the elder Browning, made even after he was placed under arrest, were allowed to be detailed to the jury.   This was a palpable violation of a rule of evidence, founded upon the purest justice and the plainest principles of reason.

3. It is insisted, farther, that there was error in granting the third charge requested in behalf of the prosecution.   The instruction is in the following words; "A reasonable doubt, authorizing an acquittal, must arise from the testimony; and if the jury are satisfied, from the testimony, of the guilt of the prisoner, beyond a reasonable doubt so arising, they must convict."

"A reasonable doubt, is not probability only, or conjecture, or supposition : the doubt which should properly induce a jury to withhold a verdict of guilty, should be such a doubt as would reasonably arise from the testimony before them."

It is possible, that there has been a clerical mistake in copying this instruction into the record, by which the word "probability," is substituted for the words "mere possibility," which are contained in the instruction granted in *Cicely's case,* and held to be correct.   However, as the charge stands in the record, *it is clearly* erroneous.

Where the probabilities are in favor of a party on trial, the jury may nevertheless entertain a doubt of his innocence.   But where, in the estimation of the jury, the probability arising from the evidence, is in favor of the innocence of the accused, it is impossible for them not to doubt as to his guilt.   If the jury entertained a well-founded doubt of the prisoner's guilt, arising from the testimony, the law made it their duty to acquit.   The instruction, if it means any thing, reverses this rule.   The jury were instructed that "probability only," was not what is meant in law by a reasonable doubt.   In effect, that a probability of the prisoner's innocence, arising upon the testimony, was not a legal foundation,

for a reasonable doubt of his guilt. The instruction, imposed upon the jury the obligation to convict, although the evidence might preponderate in favor of the accused.

In regard to the ninth instruction requested by the prisoner, we perceive no error in the refusal of the court to grant it.

It is true, that this charge is a literal transcript of language used by a learned writer in expounding the doctrines of circumstantial evidence. It is manifest, that the proposition contained in the charge, was not announced by the author from whom it was copied, as a distinct principle of law. It was intended as an illustration of the weight which should be given to circumstantial evidence, in determining the question in any given case, whether such evidence was sufficient to exclude from the mind of the judge or jury all doubt of the guilt of the party sought to be affected by it. The instruction presents an extremely abstract proposition; and was much more likely to confuse the jury, than to enlighten them, upon the questions under consideration. This was a sufficient reason for witholding the instruction; especially as the jury had been, at the instance of the prisoner, fully instructed as to the character and weight of circumstantial evidence.

As we reverse the judgment, for the errors above noticed, and remand the prisoner for a new trial, it is deemed improper to examine the exception taken to the judgment, on the motion for a new trial.

Judgment reversed, *venire de novo* awarded, and cause remanded.

--- ◆ ---

## JACOB K. WRAY, Ex parte.

1. BAIL : CAPITAL CASES.—It is in the discretion of the court, to grant or refuse bail to a prisoner, before conviction, when the proof is evident, and the presumption great.

2. SAME.—Prisoners have a constitutional right to bail before conviction, in all cases, except for capital offences, where the proof is evident, or the presumption great;