495 So.2d 5 (1986)
George MITCHELL and Joyce Wells
v.
STATE of Mississippi.
No. 55746.
Supreme Court of Mississippi.
September 24, 1986.
*6 Samuel H. Wilkins, Jackson, Mark W. Prewitt, Prewitt & Johnson, Vicksburg, for appellants.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
In controversy today, in the context of a joint trial of two persons charged with criminal conspiracy, is the admissibility of each co-conspirator's out of court declaration which points the finger at the other. The trial judge overruled defense objections and admitted the statements.
Upon analysis, we have determined that each co-conspirator's hearsay statement, with one exception to be noted below, falls outside the co-conspirator's exemption from the hearsay rule. Moreover, the statements do not interlock in substantial particulars nor are they attended by other indicia of reliability sufficient to satisfy the accused's rights under the confrontation clauses of federal and state constitutions. We reverse and remand for a new trial.

II.
On July 21, 1983, informant Clardy "Bootsie" Ellis contacted Warren County Sheriff Paul Barrett and told Barrett that he (Ellis) had been paid to find and hire a killer. The "job" Ellis was to arrange was the murder of the husband of a woman who owned a certain beauty shop on the frontage road in Vicksburg. The Sheriff's office investigated the matter, witnessed meetings and taped a conversation between the informant and a man, later identified as George Mitchell, one of the Defendants below and one of the Appellants here. According to Ellis, the killing was to take place on the next morning, July 22, 1983, at the beauty shop where the victim would arrive in a green Grand Prix at 7:00 a.m. to turn on the air conditioning before the employees arrived at 8:00 a.m.
The Sheriff and the Chief of Police of the City of Vicksburg hid in the beauty shop early on the morning of July 22. At 7:00 a.m. James Earl Wells, husband of Joyce Wells, the other Defendant/Appellant, arrived at the beauty shop in a blue Grand Prix and entered the beauty shop whereupon the officers informed him of the purported plot to kill him. Wells agreed to cooperate with the plan to capture the conspirators.
When Joyce Wells arrived at 8:00 a.m., she found the shop in disarray and her husband lying on the floor. She screamed, ran for help, and returned to the shop with two men who worked nearby. The Sheriff stepped from his hiding place, dismissed the two men who had come to render assistance, and arrested Mrs. Wells for conspiracy to murder her husband. She was transported to the Warren County Jail, where she gave oral and written statements.
Earlier that morning George Mitchell and his son had been placed under surveillance by members of the Sheriff's department who followed them to Eagle Lake in northwest Warren County. As he was returning to Vicksburg, Mitchell was arrested and he, too, was charged with conspiracy to commit murder.
On September 13, 1983, Mitchell and Wells were formally charged with conspiracy  with each other  to commit murder, Miss. Code Ann. §§ 97-1-1(a) and -3-19(1) *7 (Supp. 1985), in an indictment by the Warren County Grand Jury. Compare James v. State, 481 So.2d 805, 808-10 (Miss. 1985). Numerous motions  pre and post-trial  were filed, the rulings on some of which are argued as error. Both Defendants filed motions to suppress as evidence statements made by the other, namely, a conversation had between the informer, Bootsie Ellis, and George Mitchell, a post-arrest oral statement Mitchell made to Sheriff Barrett, and a transcribed, post-arrest statement made by Joyce Wells.
The joint indictment was called for trial on January 25, 1984, whereupon the prosecution called Ellis as its first witness, and he described a conversation he had with George Mitchell in regard to the hiring of a "hit man." At a subsequent meeting between Ellis and Mitchell at the A & P Store on Clay and Mission (streets in Vicksburg), Mitchell told Ellis, "Got to have it done right away." He identified the victim as a man who works at the Waterways Experiment Station and gave Ellis an itinerary of the route he would take on the morning of the supposed killing and stated that he would be driving a green Pontiac. Mitchell gave Ellis $500.00.
Another meeting was had mid-day that same day in a mall. Ellis had been wired with a concealed radio transmitter and the conversation was monitored by Deputy Sheriff John Dolan. Mitchell variously referred to the person who wanted the man killed as a "bitch" or "his old lady." The killing was to be done in the beauty parlor, a key to which Mitchell gave Ellis. Mitchell told Ellis to empty the cash register after killing the victim. The victim was further identified as having a bald spot, would be driving a green Pontiac and would come to the store between the hours of 6:30 and 7:00 a.m. to turn on the air conditioning. The killing was to be done by strangulation and the victim left there so that when the lady arrived at 8:00 a.m., she would find him lying on the floor. Ellis would get another $2,000.00 for the job after it was completed.
The gist of Dolan's recollection of the conversation he monitored between Ellis and Mitchell was:
Q. What was said during this conversation that you overheard?
A. Mr. Mitchell said, `Do you know where the cash box is that I told you about?' Bootsie said, `Right.' Mr. Mitchell said, `Right in back of the counter.' Bootsie said, `Right.' Mr. Mitchell said, `You can put the money in the cash box or have the money with you.' Bootsie said, `Right'. (Will it be okay to say the language that was in here?)
A. Mr. Mitchell said, `I don't want no fuck ups. I know he is a gambler I just don't want you to give it to him until the job is done.' Bootsie said, `I understand.' Mr. Mitchell said, `I know he is probably down there at the Monte Carlo loosing his ass. So, if he could get some of that money now, he would piss it off. And if he don't pull the job, then you are going to be in trouble with me and I am going to be in trouble with the people. See what I mean?' Bootsie said, `Right.' Mr. Mitchell said, `For the 60 or 70 dollars I done put off for the gas and motel rooms along the way, I don't give a shit. That is all right as long as the job gets done. But we done put this off so long we done reached the god damn day, you see, where we can't go no fucking further. Tomorrow is the last fucking day, end of story, the last day because as soon as he goes on vacation tomorrow evening he is going to want to draw money out of the bank, right?' Bootsie said, `Right.' Mr. Mitchell said, `If he ain't here no more, then he can't draw his money out of the bank. Now, I got five hundred dollars in small bills, twentys, tens and fives right here. What I want you to do is take it out of this bag and put it somewhere where he don't see it. If you got to show it to him, you got the wrong man. If he don't trust you enough to tell him the money will be there when the job is over. Now, what did he say about how he is going to do it? Has he said?' Bootsie said, `No. We haven't finished talking about that.'
*8 Before the foregoing testimony, counsel for Joyce Wells had interposed an objection based on her right to confrontation, but the objection was overruled. Mitchell never mentioned anybody by name; he referred to the other co-conspirator(s) as the "people", "bitch" or "his old lady".
Sheriff Barrett testified that, using the key Mitchell allegedly gave Ellis, he gained entry into the beauty parlor owned and operated by Defendant Wells at the Executive Plaza in Vicksburg. As described above, Barrett placed Wells under arrest shortly after her arrival that morning. Wells gave a post-arrest statement which was subsequently typed in question and answer form. In this statement, among other things, Wells admitted discussing killing her husband with Mitchell "a couple of weeks ago". In the end, however, she sought to exculpate herself by stating that she never thought Mitchell would go through with the murder.
At the request of Mitchell, the jury was specifically instructed that the statement made by Wells was to be considered only as evidence against her and not Mitchell. In the presence of the sheriff, in response to an inquiry from a friend about why she (Joyce) did this (plan to kill her husband), she replied, "I was in love with a son of a bitch who didn't love me."
When Sheriff Barrett arrested Mitchell at Eagle Lake Road (Hwy. 465), he asked Mitchell how a family man like him (Mitchell) could get himself involved in such a crime, to which Mitchell replied, "Paul (the sheriff), this woman has pestered me for over a year to do this. I guess I better call my lawyer." Mitchell also stated, "Paul, when you found out I was going to do this, why didn't you call me and tell me and I wouldn't be in this predicament." The police chief, A.J. Holliday, corroborated the sheriff's testimony. These statements by Mitchell were related to the jury over Wells' objection.
Each Defendant then moved for a directed verdict and each motion was denied. Thereupon, counsel for Mitchell made an opening statement and then rested. James Earl Wells, the alleged victim of the conspiracy and husband of Joyce Wells, was the only witness called to testify on Wells' behalf. He testified largely to a happy marriage relationship and expressed disbelief about his wife's guilt. The prosecution called two witnesses in rebuttal and the matter went to the jury after instructions from the court. The jury returned a verdict of guilty on each Defendant and each was sentenced to a term of four years to be served with the Mississippi Department of Corrections. Miss. Code Ann. § 97-1-1 (Supp. 1985).

III.

A.
The Confrontation Clause of the Sixth Amendment provides that
[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him... .
Respect for this federally created right is obligatory upon the states. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).
A comparable right is secured by Miss. Const. Art. 3, § 26 (1890) wherein it is provided:
[i]n all criminal prosecutions the accused shall have a right ... to be confronted by the witnesses against him... .
These Confrontation Clauses are in a sense hearsay rules elevated to constitutional status. Non-confronted out-of-court statements are thought to lack indicia of reliability sufficient that they be considered by the trier of fact. Such statements are not made under oath. The trier of fact does not observe the declarant's demeanor. Most important, the accused is denied cross-examination. All hearsay evidence in this sense within potential scrutiny under these Confrontation Clauses. See Mattox v. United States, 156 U.S. 237, 242-43, 15 S.Ct. 337, 339-40, 39 L.Ed. 409 (1895).
The problem of reliability is exacerbated where the out-of-court declarant is an accomplice of the accused. Unreliability presumptively, albeit rebuttably, attends an *9 accomplice's confession that incriminates others. See Lee v. Illinois, 476 U.S. ___, ___, ___, 106 S.Ct. 2056, 2063, 2064, 90 L.Ed.2d 514, 526, 529 (1986); see Holmes v. State, 481 So.2d 319, 322-23 (Miss. 1985); Hussey v. State, 473 So.2d 478, 480 (Miss. 1985).
Where the out-of-court declarant is a co-defendant who is being tried with the defendant, further problems are presented, for one defendant's confession, wholly admissible against that defendant, may also incriminate the other. Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622-23, 20 L.Ed.2d 476, 479 (1968) held admission of a co-defendant's extrajudicial statement that inculpates the other defendant violates the other's Sixth Amendment right to confront witnesses against him. See also Roberts v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100, 1102 (1968) and Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). This rule has been reaffirmed as recently as June 3, 1986, in Lee v. Illinois, 476 U.S. ___, ___, ___, 106 S.Ct. 2056, 2063, 2064, 90 L.Ed.2d 514, 526, 529 (1986). Bruton went further and held that cautionary instructions are constitutionally insufficient to secure the defendant's rights under the Confrontation Clause.
Bruton was an armed robbery case, and it has been argued that this rule has no application where the charge is conspiracy. This is correct insofar as the statement or confession of the co-defendant was made in the course of and in the furtherance of the conspiracy. Bruton has no effect upon such cases. On the other hand, post-arrest statements which by definition are made after the conspiracy has been thwarted are wholly subject to the Bruton rule even though the accused is on trial for conspiracy. See, e.g., United States v. Smith, 792 F.2d 441, 443 (4th Cir.1986); United States v. Palow, 777 F.2d 52, 57 (1st Cir.1986); United States v. Massa, 740 F.2d 629, 639 (8th Cir.1984). See also Rule 801(d)(2)(E), Miss.R.Ev., effective January 1, 1986.
Even in cases where it applies, the rule of Bruton and Lee is not absolute. The presumption of unreliability ordinarily attached to a co-defendant's statement may nonetheless be rebutted so as to meet confrontation clause standards if it is supported by a showing of particularized guarantees of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Where each defendant has given a confession and where the two confessions substantially interlock on the core facts of the crime charged, the level of trustworthiness in fact  and thus that constitutionally necessary for admissibility  may sometimes be found. Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); Seales v. State, 495 So.2d 475, 480 (Miss. 1986). On the other hand, extensive interlocking on unimportant details will not qualify statements for admissibility where
those portions of the co-defendant's purportedly `interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession... .
Lee v. Illinois, supra, 476 U.S. at ___, 106 S.Ct. at 2064-65, 90 L.Ed.2d at 529.

B.
After eight years of experience with the Bruton rule, this Court in Brown v. State, 340 So.2d 718 (Miss. 1976) announced a procedural rule which, in pertinent part, provides as follows:
[I]n such cases, the prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a co-defendant (implicating the defendant) during the state's case-in-chief, since it could not be known whether the co-defendant would testify after the state rested. The statement, if admissible, should be admitted only after the co-defendant took the stand and was subject to cross-examination by the defendant, ... .
340 So.2d at 721.
This procedure was reiterated by the Court in Langston v. State, 373 So.2d 611, 613 *10 (Miss. 1979). Suffice it to say that, if this procedure had been followed, the principal assignment of error of each defendant on this appeal would have been vitiated. As neither Wells nor Mitchell took the stand, neither statement, with the exception to be noted below, should under the Brown procedure have ever been admitted. Compare Seales v. State, 495 So.2d 475, 479 (Miss. 1986).

IV.
The statement Mitchell complains of is that given by Joyce Wells following her arrest on the morning of July 22, 1983. The statement is approximately three and a half pages in length and is in typed question and answer form, the questions being put by Sheriff Paul Barrett and the answers being given by Wells. The contents of the statement substantially aid the prosecution of Mitchell and are concomitantly devasting to his defense.
In the statement Wells states that she and Mitchell discussed killing Wells' husband "a couple of weeks ago." According to Wells, Mitchell obtained the key to the beauty shop from her and said, "It's supposed to be in the morning." At one point Mitchell had told her he thought it would take $20,000.00 to $25,000.00 to have Wells' husband killed. More tangential, but likely equally prejudicial to Mitchell in the eyes of the jury, were Wells' statements that she was having an affair with Mitchell and that over time she had given Mitchell from $18,000.00 to $19,000.00. Significantly, in the end, Wells sought to exonerate herself. The following colloquy appears:
Sheriff  You were not surprised?
Answer  Yes, I was. I didn't believe anything would happen.
Sheriff  You didn't think Mitchell would go through with it?
Answer  No, I didn't.
On its face, this statement falls within the Bruton rule and should not have been admitted against Mitchell.[1]Bruton further provides that the Circuit Court's cautionary instructions were an inadequate antidote.
The State argues, however, two theories upon which the assignment of error should be denied. First, the State claims establishment of the necessary indicia of trustworthiness so that the Wells statement was admissible against Mitchell, Bruton notwithstanding. Second, the State argues that statement falls within the so-called co-conspirator's exemption from the hearsay rule and is thus taken out of Bruton's ambit.
On the first point, we look to the question of whether the Wells statement presently challenged was interlocking with statements Mitchell himself gave. If each told essentially the same story, common sense would suggest a heightened likelihood of credibility. Seales v. State, 495 So.2d 475, 480 (Miss. 1986). The statement obtained from Mitchell via the transmitter wired onto Ellis before the arrest certainly makes it appear that Mitchell was attempting to arrange to have someone murdered. Nothing in the statement suggests the name of the victim, nor is there much of anything in the statement indicating a conspiracy with Wells, the crime with which Mitchell is charged in the indictment.
Mitchell's other statement is that he made to Sheriff Barrett following his arrest. Mitchell stated, "Paul, (the sheriff), this woman has pestered me for over a year to do this. I guess I better call my lawyer." He also stated, "Paul, when you found out I was going to do this, why didn't you call me and tell me and I wouldn't be in this predicament." The tenor of this statement, of course, is that Joyce Wells was the instigator of the conspiracy, if any. For present purposes, it is clear that little if anything said by Mitchell *11 in his two statements corroborates or interlocks with important details of the Wells statement presently under consideration. Contrast Seales v. State, supra.
We have considered the notion that Wells' statement be seen as a declaration against penal interest and thus bear a special indicia of reliability. Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980) suggests admissibility for some statements falling within "a firmly rooted hearsay exception." The thesis profits the State little for, prior to the adoption of Rule 804(b)(3), Miss.R.Ev., effective January 1, 1986, this state did not recognize the common law hearsay exception for declarations against penal interests. Ellis & Williams, Mississippi Evidence § 8-10, p. 118 (1983). The trial under review was had in January of 1984.
Moreover, that a statement is against Wells' penal interest hardly provides indicia of reliability with respect to those portions that implicate Mitchell. Indeed, post-arrest statements made by one accused pointing the finger at another are as a matter of common experience among the least trustworthy of statements  and thus most in need of cross-examination under circumstances where the trier of fact has the opportunity to observe the declarant's demeanor.
As a matter of federal constitutional law, the Wells statement was inadmissible in the prosecution of Mitchell. Lee v. Illinois, supra; Bruton v. United States, supra.
To be sure, there is a co-conspirator's exemption from the hearsay rule, even that rule's constitutional variety as recognized in Bruton and Lee. Co-conspirators' statements made in the course of and in the furtherance of the conspiracy are admissible against each other, notwithstanding the confrontation clauses and hearsay rules. Where the "in the course of" and "in the furtherance of" conditions are met, the necessary indicia of trustworthiness are thought present.
One post-Bruton case, in a plurality opinion, suggests that, at least in state conspiracy prosecutions, statements made by one conspirator during the course of and in the furtherance of the conspiracy are admissible even though they may reflect adversely upon a co-conspirator, notwithstanding the federal rule [Rule 801(d)(2)(E), Fed.R.Ev.] to the contrary. Dutton v. Evans, 400 U.S. 74, 91 S.Ct., 210, 27 L.Ed.2d 213 (1970).
It is not clear, however, that this state has ever had any such relaxed rule. Many years ago Browning v. State, 30 Miss. 656, 671-72 (1856), held admissible only those statements of a co-conspirator made "during the pendency of the criminal enterprise and in furtherance of its objects." In view of Rule 801(d)(2)(E), Miss.R.Ev., effective January 1, 1986, which imposes the "in the course of" and "in the furtherance of" requirements, there is certainly no reason to create any such already repealed rule just to save these convictions. Here Wells' statement was made after she was arrested and in custody. Any statement then made could not possibly have been in the furtherance of the conspiracy. See Fiswick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, 227-28, 91 L.Ed. 196, 200-01 (1946); United States v. Ah Kee Eng, 241 F.2d 157, 159 (2d Cir.1957). As to Mitchell, the Wells' statement is outside the co-conspirator's exemption.
The Circuit Court further erred by reference to state law. The Wells statement was offered as a part of the prosecution's case-in-chief. Joyce Wells had not testified and it was at that time not known whether Wells would take the stand. Particularized indicia of reliability had not been established. Seales v. State, supra. In that state of the matter, the Wells statement should not have been tendered by the prosecution. The Circuit Court committed error when it overruled Mitchell's objection to admission of the Wells statement. Brown v. State, supra, 340 So.2d at 721; Langston v. State, supra, 373 So.2d at 613.
In summary, when the Circuit Court overruled Mitchell's objections to introduction of the statement made by Wells on the morning of July 22, 1983, the court did so *12 in contravention of rights secured to Mitchell by the confrontation clauses of federal and state constitutions as well as the procedural mandates of the Brown case cited above. This is not a case where on the remaining evidence the jury "could have arrived at no verdict other than that of guilty". Norman v. State, 381 So.2d 1024, 1029 (Miss. 1980). Put otherwise, it may not be fairly said that the error found was harmless beyond a reasonable doubt. Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059-60, 31 L.Ed.2d 340, 345 (1972); Jones v. State, 461 So.2d 686, 701 (Miss. 1984).
The conviction of George Mitchell is reversed and the case is remanded for a new trial.

V.
Turning to the appeal of Joyce Wells, we shift our focus to the extra-judicial statements of George Mitchell and the matter of whether those statements might properly have been presented to the jury as substantive evidence against Joyce Wells.
We find that two such extra-judicial declarations of Mitchell were presented to the jury. The first was that related by Deputy Sheriff John Dolan as to what he had heard Mitchell say to Bootsie Ellis. This testimony is described in Section II above. It will be recalled that Mitchell never mentioned anybody by name; he referred to the other co-conspirator(s) as the "people", "bitch", or "his old lady".
In any event, we think it clear that this statement was made in the course of and in the furtherance of the conspiracy. This statement falls within the co-conspirators exemption from the hearsay rule, including the Bruton-Lee variety, and was thus admissible as substantive evidence against Wells  to the limited extent that the statement may have implicated Wells. See, e.g., United States v. McCown, 711 F.2d 1441, 1448-49 (9th Cir.1983); United States v. Singer, 660 F.2d 1295, 1307 (8th Cir.1981); United States v. Jannotti, 729 F.2d 213, 218-19 (3d Cir.1984); see also Browning v. State, 30 Miss. 656, 670-71 (1856); Stovall v. Farmers & Merchants Bank of Memphis, 16 Miss. 305, 315 (1847).
Mitchell made a second out of court declaration heard by the jury over Wells' objection. This statement, as related by Sheriff Paul Barrett, was, "Paul, this woman has pestered me for over a year to do this, I guess I better call my lawyer." The Circuit Court instructed the jury "that the statement allegedly made by the co-defendant, Mr. Mitchell, to Sheriff Barrett is not to be considered by you as evidence as to the guilt of the defendant, Mrs. Joyce Wells.
This statement falls within the Bruton rule. As a post-arrest statement, it falls outside the co-conspirator's exemption, as the conspiracy had ended. United States v. Gullett, 713 F.2d 1203, 1213 (6th Cir.1984); United States v. Foster, 711 F.2d 871, 881 (9th Cir.1983). Moreover, there are no redeeming indicia of reliability. Mitchell's statement does not interlock with Wells'. The statement, rather, is rank post-arrest fingerpointing, the sort of declaration most in need of in-court confrontation to assure reliability. Bruton, of course, holds that cautionary instructions are no panacea.
Bruton directs that this second Mitchell statement should not have been admitted. Beyond that, the procedure set forth in our Brown case required that this statement not be admitted until such time as Mitchell had taken the witness stand or until particularized guarantees of trustworthiness be established outside the jury's presence. Seales v. State, supra. Admission of the statement was error as to Wells.
The harmless error inquiry here is a closer one than was the case with the Wells statement discussed in Section IV and admitted as substantive evidence against Mitchell. The statement, though brief, goes to the heart of the charge against Wells. The statement, "This woman has pestered me for over a year to do this," not only establishes that Wells engaged in discussions and plans to carry out the murder, *13 it suggests that Wells had the dominant mind in the conspiracy.
We regard this evidence as of substantial importance to the prosecution in the context of Wells' own statement that, even though she had discussed the whole idea with Mitchell, she never really thought Mitchell would go through with the plan and was totally surprised when she arrived at the beauty shop on the morning of July 22. Wells' own statement was fairly susceptible of consideration by the jury as a pre-conspiracy contemplation, a gleam in the eye, so to speak, which the jury might well have found insufficient evidence upon which to base a conviction. When Mitchell's statement is overlaid  and when the jury is told that, "This woman has pestered me for over a year to do this," a different, darker light is cast toward Wells. We cannot fairly say that either the Bruton error or the Brown error was harmless beyond a reasonable doubt. Jones v. State, 461 So.2d 686, 701 (Miss. 1984).
The conviction of Joyce Wells is reversed and the case is remanded for a new trial.

VI.
Because the case must be retried, we think it appropriate to comment upon another feature of the trial proceedings.
We have explained above that, as the out-of-court inculpatory declarations of George Mitchell were put before the jury, the Circuit Court gave verbal instructions that those were to be considered as evidence against Mitchell only. Likewise, as the extra-judicial declaration of Joyce Wells was put before the jury, the Circuit Court admonished the jury that it should be considered only against her and not as substantive evidence against George Mitchell. The federal Bruton rule and our Brown rule provides that these safeguards were inadequate, for the reasons articulated above.
Notwithstanding, the Circuit Court in the end presented to the jury two written instructions which purport to define the co-conspirator's exemption. The first such instruction, S-4, advised the jury that it could consider statements made by Joyce Wells outside the presence of George Mitchell as evidence against Mitchell if the statements fell within the co-conspirator's exemption as defined.[2] Conversely, the Circuit Court granted Instruction S-6 which advised the jury that statements made by George Mitchell outside the presence of Joyce Wells could be considered as evidence against her if such statements were within the co-conspirator's exemption.[3]
We find fault with this procedure on three counts:
First, the instructions conflict with verbal instructions given the jury during the course of the trial. As we have held above, at least the first Mitchell statement, that given to Bootsie Ellis and overheard by Deputy Sheriff Dolan, falls within the co-conspirator's exemption from the hearsay rule. The problem is that throughout the *14 trial the jury was instructed that the statements given by Mitchell and Ellis could be considered as substantive evidence only against the declarant and not against the other. The written instruction tells the jury otherwise. Assuming arguendo that the instructions are accurate statements of the law, with one exception to be noted below, unacceptable confusion was likely to be generated within the jury by their conflict with the Circuit Court's previous verbal instructions.
Second, each instruction does contain one important error of law. S-4 advises the jury that the admissibility of a statement by Joyce Wells as substantive evidence against George Mitchell turned on whether Mitchell had "extricated himself from the conspiracy." This is backwards. To fall within the co-conspirator's exemption, the Wells statement must have been made at a time when she  and not Mitchell  was still acting in the course and in the furtherance of the conspiracy. The same error appears in reverse in Instruction S-6. In determining admissibility of statements made by Mitchell, the question is whether Mitchell, not Wells, was still acting in the furtherance of the conspiracy.
Third, and finally, the co-conspirator's exemption is a rule of evidence. Ordinarily, rulings on the admissibility of evidence are not matters for the jury. For reasons we trust are obvious, the question of whether an extra-judicial declaration by an alleged conspirator is admissible within the co-conspirator's exemption from the hearsay rule is a question within the exclusive province and responsibility of the trial judge. When the out of court statement is tendered, the trial judge should make his ruling subject only to reversal by this Court, not the jury.

VII.
The matters discussed above adjudge the only error assigned by Mitchell. Because of our disposition of the confrontation clause issue asserted by Wells, we do not consider or discuss any other assignments of error she has presented.
CONVICTION OF GEORGE MITCHELL REVERSED AND REMANDED FOR A NEW TRIAL; CONVICTION OF JOYCE WELLS REVERSED AND REMANDED FOR A NEW TRIAL.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] With respect to cases tried after January 1, 1986, Rule 105, Miss.R.Ev., authorizes the trial judge to excise those portions of the statement inadmissible under Bruton and allow presentation to the jury of those portions otherwise admissible against the declarant.
[2] Instruction S-4 reads:

The Court instructs the Jury that any statement(s) made by Joyce Wells outside the presence of George Mitchell may not be considered as evidence against George Mitchell unless you find from the evidence beyond a reasonable doubt that:
(1) A conspiracy to kill James Wells had begun prior to such statement(s) being made by Joyce Wells, and
(2) George Mitchell was a co-conspirator at the time such statement(s) were made by Joyce Wells, and
(3) At the time of such statement(s) by Joyce Wells, George Mitchell had not extricated himself from the conspiracy by making a full disclosure to law enforcement authorities.
[3] Instruction S-6 reads:

The Court instructs the Jury that any statement(s) made by George Mitchell outside the presence of Joyce Wells may not be considered as evidence against Joyce Wells unless you find from the evidence beyond a reasonable doubt that:
(1) A conspiracy to kill James Wells had begun prior to such statement(s) being made by George Mitchell, and
(2) Joyce Wells was a co-conspirator at the time such statement(s) were made by George Mitchell, and
(3) At the time of such statement(s) by George Mitchell, Joyce Wells had not extricated herself from the conspiracy by making a full disclosure to law enforcement authorities.