23770. JONES v. THE STATE.

ARGUED NOVEMBER 14, 1966—DECIDED FEBRUARY 23, 1967—
REHEARING DENIED MARCH 9, 1967.

**160**

*Wilbur D. Owens, Jr.,* for appellant.

*Jack J. Gautier, Solicitor General, Fred M. Hasty, Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Carter A. Setliff, Assistant Attorney General,* for appellee.

Cook, Justice. ■ Prior to the trial of the case the defendant filed a plea in abatement asserting that the indictment was returned by a grand jury selected from a jury list which had been compiled in an illegal manner and in violation of the Fourteenth Amendment to the Constitution of the United States, in that the jury commissioners of Bibb County intentionally and systematically excluded eligible and qualified Negro citizens from the jury list. In the fourth assignment of the enumeration of errors it is contended that the trial court erred in the denial of this plea. In the fifth assignment it is asserted that it was error to deny the defendant's challenge to the array, which challenged the composition of the traverse jury list.

Counsel for the State and the defendant stipulated that according to the 1960 United States census the total population of Bibb County was 141,249, of which 47,131 were persons of the Negro race. Of the total population of Bibb County, 81,133 persons were 21 years of age and over, and of these, 24,894 were nonwhite persons. On the tax digests of Bibb County for 1963 there were 34,312 white persons and 8,434 Negroes.

Counsel for the defendant has submitted a supplemental brief citing the recent decision by the Supreme Court of the United States in Whitus v. Georgia, 385 U.S. 545 (187 SC 643, 17 LE2d 599), which reversed the decision of this court in *Whitus v. State,* 222 Ga. 103 (149 SE2d 130). In the decision by the Supreme Court of the United States it was held that the proof showed a prima facie case of purposeful racial discrimination in the selection of grand and traverse jurors in Mitchell County, where Whitus was tried. The Supreme Court pointed

out that the jurors were selected from tax digests maintained on a racially segregated basis, which gave an opportunity for discrimination, and that the disparity between the percentage of Negroes on the tax digest and those on the jury lists strongly pointed to the conclusion that discrimination was present. It was further held: "The State offered no explanation for the disparity between the percentage of Negroes on the tax digest and those on the venires, although the digest must have included the names of large numbers of 'upright and intelligent' Negroes as the statutory qualification required. In any event the State failed to offer any testimony indicating that the 27.1% of Negroes on the tax digest were not fully qualified. The State, therefore, failed to meet the burden of rebutting the petitioners' prima facie case."

It is the view of this court that the present case is distinguishable from the Whitus case decided by the Supreme Court of the United States. The evidence in the present case showed that the percentage of Negroes on the 1963 tax digests was approximately 20%. The only evidence as to the number of Negroes selected for the traverse jury list (which was used in selecting the grand jury list) was that the solicitor knew approximately 285 of the 5,665 persons selected were Negroes, approximately 5%. The names were selected from three tax digests, two of which were separated as to Negro and white persons.

Testimony in regard to the selection of the jury lists was as follows: The jury commissioners selected the jurors from the tax digests, and used the standard required by law in selecting jurors, that they be upright and intelligent citizens. No person was excluded from the jury list because of race. Every name on the tax commissioners' records was called out before the jury commissioners, and each person was considered as a possible juror. In selecting the jurors, the commissioners used materials such as the previous jury book, the city directory, their personal knowledge, and questionnaires mailed to taxpayers. They considered such factors as the handwriting and spelling on the tax returns and on the questionnaires, and

whether taxpayer had been bankrupt, had a police record, or had been convicted of a crime.

All public officers are presumed to have discharged their sworn official duties. *Kirk v. State,* 73 Ga. 620 (3b) ; *Horne v. State,* 170 Ga. 638, 640 (153 SE 749) ; *Cornelious v. State,* 193 Ga. 25, 32 (17 SE2d 156) ; *Thompson v. State,* 203 Ga. 416, 418 (47 SE2d 54) ; *Cole v. Foster,* 207 Ga. 416, 421 (61 SE2d 814). Under the testimony in this case we can not assume that the jury commissioners did not eliminate prospective jurors on the basis of their competency to serve, rather than because of racial discrimination.

■ The first two assignments of error pertain to the sufficiency of the evidence to sustain the verdict, and it has been strongly urged by counsel for the defendant that the evidence was insufficient to support the verdict. The defendant made a statement to the officers investigating the homicide in which he admitted that he killed the deceased, but claimed that the homicide occurred in a struggle over a pistol which the deceased had pointed at him.

It is the general rule that: "A jury in passing upon a confession or an incriminating admission may, if they see proper, accept a part thereof as true and reject a part thereof as false." *Cook v. State,* 114 Ga. 523 (40 SE 703) ; *Smith v. State,* 202 Ga. 851, 859 (45 SE2d 267). It is also the rule in regard to incriminating statements that: "An admission of the main fact, from which the essential elements of the criminal act may be inferred, amounts to an admission of the crime itself. If the main fact is admitted with a qualifying exclusion of a necessary ingredient of the crime charged, the crime is not confessed. The qualification is a part of the admission, and both must be considered in interpreting the meaning of the statement. It would be manifestly unfair to hold a person criminally bound by a statement which admits the commission of an act and in the same breath legally justifies or excuses the same." *Owens v. State,* 120 Ga. 296, 299 (48 SE 21) ; *Futch v. State,* 90 Ga. 472, 481 (16 SE 102).

There is little evidence to connect the defendant with the homicide apart from his incriminating admissions. His own

admitted conduct is, perhaps, the strongest circumstance indicating his guilt of the crime of murder. In his statement he admitted that after he shot the deceased he carried her body to the rear of her home and buried it. This action might have been prompted by fear of the consequences of the homicide, but the jury was authorized to consider it as a circumstance indicating his consciousness of guilt of the crime of murder. See *Hixon v. State,* 130 Ga. 479 (2) (61 SE 14) ; *Drake v. State,* 221 Ga. 347 (1) (144 SE2d 519).

The evidence disclosed that the body of the deceased had three gunshot wounds. The bullet producing the fatal wound entered above the right ear, passed downward, and the exit wound was left of the nostrils. The other two wounds were in the right hip and to the right side below the umbilicus. Both of these bullets passed slightly upward through the body. All of the bullet wounds had been distorted in some manner so that they had more the appearance of stab wounds than bullet wounds, and it was only after an internal examination of the wounds that it was determined that they had been made by bullets. Since the defendant admitted that he buried the body of the deceased, he must have distorted these wounds in some manner before the burial. The evidence of this distortion of the wounds and the evidence as to the position of the wounds could have been considered by the jury as circumstances to refute that part of the defendant's statement in which he asserted that the killing was accidental in a struggle over the gun. We can not say as a matter of law that there was not sufficient evidence to support the verdict of the jury.

■ The third assignment of error complains of a portion of the charge as follows: "Gentlemen, I charge you that ordinarily the jury in considering an admission which is partly inculpatory and partly exculpatory may believe it in part and disbelieve it in part and this rule by the very terms of the statute is especially applicable to the statement of the defendant. However, where the State must rely upon the defendant's admission alone for essential elements of the case, this rule does not apply to the extent that a verbal segregation of what the defendant said is to be permitted. If the main fact is admitted

164

with a qualifying exclusion of a necessary ingredient of the crime charged, the crime is not confessed. The qualification is a part of the admission and both must be considered in interpreting the meaning of the statement. It would be manifestly unfair to hold a person criminally bound by a statement which admits the commission of an act and in the same breath legally justifies or excuses the same."

The language of this charge, with the exception of the first sentence, is almost identical with a part of the fourth division of the opinion by the Court of Appeals in *Wall v. State*, 5 Ga. App. 305, 308 (63 SE 27). A part of the language is a quotation from *Owens v. State*, 120 Ga. 296, 299, supra. This charge was substantially correct, and was not harmful to the defendant.

*Judgment affirmed. All the Justices concur.*