667 So.2d 15 (1996)
Leroy Christopher WILLIAMS
v.
STATE of Mississippi.
No. 92-KA-00761-SCT.
Supreme Court of Mississippi.
January 11, 1996.
*17 Roy O. Parker, Jr., Tupelo, MS; for appellant.
Michael C. Moore, Attorney General, Jackson, MS; W. Glenn Watts, Sp. Ass't Attorney General, Jackson, MS; for appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
BANKS, Justice, for the Court.
Here we are called upon to examine the interplay between our spousal competence doctrine and the hearsay exception prescribed in Rule 804(b)3 of the Mississippi Rules of Evidence. Because the statement at issue does not genuinely inculpate the declarant, we conclude that it was erroneously admitted. Accordingly, we reverse. Along the way we examine the impact of the Confrontation Clause on the 804(b)3 exception in the context of the circumstances here and we treat other issues susceptible to recurrence should this matter be retried.

I.
On the early morning of December 6, 1990, in Tupelo, Mississippi the defendant Chris Williams received a knock on his door from Rodney "Knuckles" Richardson. Richardson, appearing to be intoxicated from alcohol and drugs, loudly demanded money that Williams apparently owed Richardson's brother. Williams insisted that Richardson leave, but he refused to comply. Williams testified that he saw Richardson make a gesture as if he were reaching behind his back, at which time Williams grabbed his gun and fatally shot Richardson.
After the defendant shot Richardson, he grabbed Richardson and placed him in the trunk of the defendant's car. It is disputed whether he received help in doing so from Chelsea Williams, who was in the defendant's home at the time of the shooting. He then drove to a garbage dump and disposed of the body. After dumping the body, Williams disposed of his own clothes and attempted to wash the blood out of the trunk of the car. The following day, Williams traded his car and moved into a hotel that night. While attempting to move his furniture out of his home and into a storage warehouse, he was arrested and charged with the murder of Rodney Richardson.
Prior to trial, the defendant made motions in limine to exclude evidence of the removal of the victim's body from the crime scene and evidence of Williams' flight after the killing, which were both overruled. The defendant also moved to dismiss the indictment on the grounds that the State had failed to comply with the special magistrate's order which required the State to provide two eyewitnesses that the defendant had been unable to locate at the preliminary hearing. This motion was also denied by the trial court. The defendant was denied a related motion to limit testimony of the eyewitnesses to the statements which they had received from the State.
*18 Williams also attempted to prevent the introduction of a statement made by Chelsea Williams, whom he married just prior to trial. The statement was made while Chelsea was in custody and alleged that Richardson was still alive when he was placed inside of the trunk. The statement further alleged that Chris Williams considered returning to the garbage dump and shooting Richardson again to ensure that he was dead. The trial court allowed the introduction of the statement as a valid exception to the hearsay rule under Rule 804(b)3 of the Mississippi Rules of Evidence.
The jury found the defendant guilty of manslaughter and, following the adverse disposition of post verdict motions, Williams now appeals to this Court to consider the following issues:
A) WHETHER THE TRIAL COURT ERRED IN ADMITTING CHELSEA BLANCHARD WILLIAMS' STATEMENT;
B) WHETHER THE TRIAL COURT DENIED WILLIAMS DUE PROCESS IN HIS AVERY PRELIMINARY HEARING;
C) WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF WILLIAMS' REMOVAL OF THE BODY;
D) WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF ALLEGED FLIGHT;
E) WHETHER THE JURY VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE; AND
F) WHETHER THE TRIAL COURT ERRED IN NOT ISSUING INSTRUCTION D-16 WHICH INSTRUCTS THE JURY THAT ANY REASONABLE DOUBT IS TO BE RESOLVED IN THE FAVOR OF THE DEFENDANT.

II.

a.
Williams asserts that the trial court erred in allowing the admission of Chelsea Williams' statement into evidence. He contends that the statement is inadmissible because of the spouse's incompetence to testify, that the statement is inadmissible hearsay, the involuntary nature of the statement, and that the statement violates his right to confrontation under both the Mississippi and the United States Constitutions.
The trial court ruled that Chelsea Williams, the defendant's wife, was unavailable to testify under Rule 804(a)1 of the Mississippi Rules of Evidence following Simpson v. State, 497 So.2d 424 (Miss. 1986). The court also held that a reading of the statement would lead one to the reasonable conclusion that it was made against Williams' interest. Furthermore, in allowing the introduction of this statement the trial court expressed that a "presumption of truthfulness" attached to the statement because it "contains sufficient incriminating statements to subject [the]... defendant to criminal prosecution as an accessory."
Chelsea's statement is clearly inadmissible hearsay under Rule 802 of the Mississippi Rules of Evidence unless it falls within one of the hearsay exceptions contained in Rule 804(b). An inquiry into the admissibility of Chelsea Williams' statement should begin with the determination of whether it is a statement against the declarant's penal interest as defined in Rule 804(b)3.
Rule 804(b)3 provides:
(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
....
(3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
MISS.R.EVID. 804(b)3. The interpretation of this rule has been expanded by the federal courts as well as the Mississippi Supreme Court to include declarations against penal interest as well as those against pecuniary or *19 proprietary interest. See United States v. Sarmiento-Perez, 633 F.2d 1092, 1094-1095 (5th Cir.1981); Mitchell v. State, 495 So.2d 5 (Miss. 1986); Ponthieux v. State, 532 So.2d 1239 (Miss. 1988); Carr v. State, 655 So.2d 824 (Miss. 1995).
In order for this statement to qualify under Rule 804(b)3, the declarant, Chelsea Williams, must be unavailable as defined in Rule 804(a). The defense as well as the state have asserted that Chelsea Williams is incompetent to testify as the defendant's spouse. Under Miss. Code Ann. 1972 § 13-1-5 (Supp. 1995), husbands and wives may only be competent as witnesses in their own behalf, in all controversies between them, or in a criminal prosecution of either husband or wife in matters involving the neglect, delinquency, desertion, nonsupport, or abandonment of their children. The Mississippi Supreme Court has held that § 13-1-5 prohibits the prosecution from calling the defendant's wife to testify against her husband. See Bayse v. State, 420 So.2d 1050, 1054 (Miss. 1982); Wallace v. State, 254 Miss. 944, 183 So.2d 525 (1966); Outlaw v. State, 208 Miss. 13, 43 So.2d 661 (1949). Rule 601 of the Mississippi Rules of Evidence incorporates this statutory provision.
It is apparent that Chelsea Williams is unavailable to testify concerning the subject matter of her statement under Rule 804(a)1. The next relevant inquiry is whether the statement qualifies under Rule 804(b)3 as a statement against the declarant's penal interest. Rule 804(b)3 was adopted by the Mississippi Rules of Evidence in 1986, extending our common law statement against interest exception to statements against penal interest. Since this extension, this Court has looked upon such declarations against penal interest which inculpate others unfavorably and has usually held that such statements are unreliable and untrustworthy. See Mitchell v. State, 495 So.2d at 11; Parker v. State, 514 So.2d 767 (Miss. 1986); Gullett v. State, 523 So.2d 296 (Miss. 1988); Ponthieux v. State, 532 So.2d at 1239. In Ponthieux v. State, this Court stated that testimony of a co-conspirator's counsel, as to his client's role in the crime, was inadmissible under Rule 804(b)3 because the statements were "intended to serve, not prejudice, ..." the declarant's interests. Ponthieux v. State, 532 So.2d at 1246.
The United States Supreme Court has held that the statement must be "sufficiently against the declarant's penal interest `that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" Williamson v. United States, ___ U.S. ___, ___, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994).[1] The Fifth Circuit U.S. Court of Appeals has stated that in determining whether such a statement is against the declarant's penal interest, the government should "be required to show that the statement clearly and directly implicates the declarant himself in criminal conduct." U.S. v. Sarmiento-Perez, 633 F.2d at 1101.
The Fifth Circuit further stated that "a close examination of all the circumstances surrounding the making of the statement is required in order to determine whether it so contravenes the declarant's penal interest that a reasonable person in [the declarant's] ... position would not have made the statement accusing a third person unless [she] ... believed it to be true." Id. at 1102. In Sarmiento-Perez, the defendant challenged the admission of a confession of a co-defendant who, while in custody, stated that the defendant was the source of cocaine and an active participant in the sale of cocaine to a government agent. Id. at 1096.
The court found that the confession "was not a spontaneous declaration made to friends and confederates, but a custodial confession, given under potentially coercive circumstances that could not at trial and cannot now be adequately examined." Id. at 1102. Furthermore, the court stated that within such custodial confession there were "obvious motives for falsification, the very natural desire to curry favor from the arresting officers, [and] the desire to alleviate culpability by implicating others,... all [of which] *20 might lead an arrestee-declarant to misrepresent or to exaggerate the role of others in the criminal enterprise." Id. The Fifth Circuit concluded that in considering these factors, "it is reasonable to suppose that this declarant ... might well have viewed the statement as a whole including the ostensibly disserving portions to be in his interest rather than against it." Id. Thus, the court held that the confession was inadmissible. Id.
In Williamson, the United States Supreme Court stated that "whether a statement is self-inculpatory or not can only be determined by viewing it in context." Williamson v. United States, ___ U.S. at ___, 114 S.Ct. at 2436. In Williamson, the defendant challenged the admission of a co-defendant, Harris, who stated that he was transporting cocaine for Williamson and that he had initially lied about the source of the drugs because he was afraid of Williamson. Id. at ___-___, 114 S.Ct. at 2433-2434. The Court stated that parts of Harris' confession which implicated Williamson "did little to subject himself to criminal liability." Id. at ___, 114 S.Ct. at 2437. Furthermore, "a reasonable person in Harris' position might even think that implicating someone else would decrease his practical exposure to criminal liability, at least so far as sentencing goes." Id. In remanding the case to the district court for a determination of whether each of the statements in Harris' confession was truly self-inculpatory, the Court implied that only those portions of a defendant's confession which genuinely inculpate the defendant should be admissible as declarations against penal interest. Id.
In the present case, the trial court found that the statement of Chelsea Williams contained incriminating statements which could subject her to criminal prosecution as an accessory. The portion of Chelsea Williams' statement which is suggested to have been incriminating states:
"... I held the trunk lid up and Chris threw Knuckles inside of the trunk... . I knew that he was still alive when Chris put Knuckles in the trunk because I could hear Knuckles snoring... ."
There is nothing within this portion of the statement which inculpates the declarant. In fact, when reading the statement as a whole, which was admitted into evidence by the trial court in its entirety, it is clear that Chelsea Williams completely exculpated herself from criminal liability. Within her statement, she also said that she thought that Chris was taking Knuckles to the hospital, and that Chris told her that he placed Knuckles in the trunk because he did not want to get blood on the seats of the car. She said nothing that would have "clearly and directly" exposed her to criminal liability. Ponthieux v. State, 532 So.2d at 1246.
Furthermore, the statement completely inculpated the defendant by stating that he dumped the victim's body in a garbage yard and that he considered returning back to the garbage yard and shooting him again to ensure that he was dead. Thus, even if some of this information had been incriminating, these statements may also be viewed as an attempt to divert attention from her own culpability to that of the defendant. As this Court stated in Mitchell, "post-arrest statements made by one accused pointing the finger at another are as a matter of common experience among the least trustworthy of statements... ." Mitchell v. State, 495 So.2d at 11.
It should also be noted that Chelsea Williams' statement was made while she was in custody. Therefore, under Sarmiento-Perez, there existed a "very natural desire to curry favor from the arresting officers ... [as well as a] desire to alleviate culpability by implicating others... ." U.S. v. Sarmiento-Perez, 633 F.2d at 1103. Viewing Chelsea Williams' statement for its content and in the context in which it was given, it is clear that this statement was not such that she believed it would have subjected her to criminal liability. Thus, the trial court committed error in admitting this statement under Rule 804(b)3. Ponthieux v. State, 532 So.2d at 1246; Mitchell v. State, 495 So.2d at 11.
Even if Chelsea Williams' statement had been admissible under a hearsay exception, our inquiry would not end. The defendant asserts that the introduction of this statement is a violation of his right to confrontation under both the United States and *21 the Mississippi Constitutions. Both the United States Supreme Court and this Court have ruled that the Confrontation Clause may restrict the range of admissible hearsay. See Seales v. State, 495 So.2d 475, 479 (Miss. 1986); Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2358, 65 L.Ed.2d 597 (1980). Such statements may be precluded where they lack indicia of reliability and trustworthiness. Ohio v. Roberts, 448 U.S. at 56, 100 S.Ct. at 2533-34; Mitchell v. State, 495 So.2d at 11.
The United States Supreme Court has held that reliability can be inferred "where the evidence falls within a firmly rooted hearsay exception ...," otherwise, there must be "a showing of particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. at 56, 100 S.Ct. at 2534. A majority on the United States Supreme Court has yet to conclude that Rule 804(b)3 falls within a firmly rooted hearsay exception. See Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Therefore, the statement in this case must contain particularized guarantees of trustworthiness.
The Court has stated that "`particularized guarantees of trustworthiness' must be shown from the totality of the circumstances ...," including only those relevant circumstances that surround the making of the statement and that "render the declarant worthy of belief." Idaho v. Wright, 497 U.S. 805, 819, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The Court also stated that "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." Id. at 820, 110 S.Ct. at 3149. Considering the totality of the circumstances, including the declarant's motive to fabricate as well as her traumatic mental state while in custody, this statement fails under Confrontation Clause analysis and should not be admitted.
The defense also suggests that by admitting Chelsea Williams' statement into evidence, the State effectively forced Mrs. Williams to testify against her husband, thus violating both Miss. Code Ann. § 13-1-5 and Rule 601 of the Mississippi Rules of Evidence which generally declare spouses to be incompetent to testify against each other. The strict interpretation of the spousal privilege has been criticized by other jurisdictions as frustrating the principle of "utilizing all rational means for ascertaining truth." See United States v. Archer, 733 F.2d 354 (5th Cir.1984); Trammel v. United States, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). However, most jurisdictions which do not adhere to the strict interpretation of the rule are free of statutes which specifically prohibit the admission of spousal testimony. See U.S. v. Archer, 733 F.2d at 354; Ballard v. State, 252 Ga. 53, 55, 311 S.E.2d 453, 455 (1984); Commonwealth v. Newman, 534 Pa. 424, 633 A.2d 1069 (Pa. 1993); Johnson v. State, 803 S.W.2d 272 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). In light of an explicit prohibition against spousal testimony, our statutes and rule dictate a different result. Bayse v. State, 420 So.2d at 1054.

b.
The defendant requested and was granted a preliminary hearing after his indictment on February 5, 1991. He asserts that two of the State's key witnesses, Christy Wells and Eugene Rogers, could not be obtained through the standard means of issuing process and attempted to require the State to produce the witnesses. The trial court held that the State was not required to produce such witnesses at the defendant's preliminary hearing. The defendant now contends that the trial court's holding resulted in the denial of the defendant's right to an adequate preliminary hearing.
The defendant has based his argument on this Court's holding in Avery v. State, 555 So.2d 1039 (Miss. 1990). However, this Court's decision in Mayfield v. State, 612 So.2d 1120 (Miss. 1992), overruled the decision in Avery and held that once a defendant has been indicted by a grand jury, the right to a preliminary hearing and all privileges which attach thereto are deemed waived. Mayfield v. State, 612 So.2d at 1128. The defendant's argument is therefore, without merit.

*22 c.
The defendant asserts that the trial court committed error in admitting evidence of the removal of the body from the scene of the shooting because of its irrelevance to the "ultimate issue of guilt or innocence." He states that "nothing that happened after the shooting could possibly have an impact on whether or not the shooting was justified."
In asserting this position, the defendant cites Bangren v. State, 198 Miss. 359, 22 So.2d 360, 361 (1945) and Hunter v. State, 183 Miss. 779, 184 So. 835 (1939) where this Court ruled that particular conduct or acts subsequent to the crime for which the defendants were charged were irrelevant. However, the obstacle to relevance in those cases was not the particular time period at which the acts occurred, rather it was the irrelevance of those acts themselves as to whether the crimes for which the defendants were charged were actually committed.
In fact, this Court has observed that the demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence. Harrelson v. State, 217 Miss. 887, 891, 65 So.2d 237, 239 (1953); Kolb v. State, 542 So.2d at 265.
An inquiry into the relevance of evidence must begin with Rule 401 of the Mississippi Rules of Evidence, which states:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Rule 402 states that "all relevant evidence is admissible." Thus, the question before this Court is whether evidence showing that after shooting Rodney Richardson, the defendant placed his body in the trunk of the defendant's car, drove to a garbage dump, and dumped the body in the garbage yard has a tendency to make any fact that was of consequence to the determination of whether the defendant killed Richardson in self defense more probable or less probable without this evidence.
In Jones v. State, 223 Ga. 157, 154 S.E.2d 228 (Ga. 1965), the Georgia Supreme Court held that evidence showing that the defendant carried his victim's body to the rear of the victim's home and buried it after he shot her was properly placed before the jury as a "circumstance indicating his consciousness of guilt of the crime of murder." Id. at 163, 154 S.E.2d at 232. The facts in this case are analogous to those in Jones. Although the defendant claims that he was afraid for his life and shot Richardson out of self defense, the defendant placed Richardson's body in the trunk of the defendant's car, drove to a garbage dump, and dumped the body in the garbage yard. The facts subsequent to the shooting of Rodney Richardson are circumstances which may indicate the defendant's consciousness of guilt of the crime of manslaughter. The court committed no error in allowing this evidence.

d.
The defendant claims that the trial court committed error by allowing evidence of Williams' flight. On the day after the shooting, Williams traded his car at Nolan Brothers. He and Chelsea then moved into a hotel and spent two nights there while Williams attempted to move his furniture into a storage warehouse. The defendant suggests that flight evidence is probative only if it is relevant to identify the defendant and to prove that some event did occur, thus it is irrelevant in this case where there is no dispute as to whether Williams shot the victim. However, in this particular case, evidence of Williams' flight seems to be probative for reasons other than Williams identity.
The defendant cites Dennis v. State, 555 So.2d 679, 683 (Miss. 1989), as authority for the proposition that "flight is no more proof positive of guilt, than of innocence." On the contrary, Dennis v. State stands for the proposition that "failure to flee is a circumstance indicative of nothing, and is as consistent with guilt as innocence." Dennis v. State, 555 So.2d at 683. The Court in that case merely expressed that the failure to flee was not an indication of innocence. This is quite distinguishable from evidence of Williams' flight in the present case.
*23 It is a well-established principle that flight is admissible as evidence of consciousness of guilt. Lee v. State, 457 So.2d 920 (Miss. 1984); Hill v. State, 432 So.2d 427 (Miss. 1983), cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1984); United States v. Ballard, 423 F.2d 127 (5th Cir.1970) (quoting Wigmore, Evidence, 276 (3d ed. 1940)). The defendant cites Brock v. State, 530 So.2d 146 (Miss. 1988), as being distinguishable from the facts of the present case. In Brock, this Court held that a flight instruction was appropriate because flight was "highly probative" to the facts of that particular case. Id. at 153. In Brock, after the defendant had been identified as the perpetrator of the crime, he fled. Brock v. State, 483 So.2d 358, 359 (Miss. 1986). Contrary to the defendant's assertions, the situation in Brock is quite similar to the present case. In the present case, after Williams shot Rodney Richardson, he traded his car, moved into a hotel, and attempted to move his furniture into a storage warehouse. As in Brock, evidence of Williams' flight is "highly probative." Miss.R.Evid. 401.
Evidence of flight is inadmissible where there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant. Mack v. State, 650 So.2d 1289 (Miss. 1994); Fuselier v. State, 468 So.2d 45 (Miss. 1985). However, no such claim is present here. Thus, the defendant's claim is without merit.

e.
The defendant asserts that the evidence was insufficient to convict the defendant of manslaughter. Where the defendant has challenged the legal sufficiency of the evidence, the authority of the Mississippi Supreme Court to interfere with the jury's verdict is quite limited. McFee v. State, 511 So.2d 130, 133 (Miss. 1987). There must be a consideration of all of the evidence, that supporting the case for the prosecution as well as that supporting the defendant's case, in the light most consistent with the verdict. Id. The prosecution has the benefit of all favorable inferences which may reasonably be drawn from the evidence. Id. If the facts and inferences are so overwhelming that a reasonable jury could not have found beyond a reasonable doubt that the defendant was guilty, reversal and discharge are required. Id. However, if there is substantial evidence of such quality and weight that it is uncertain whether reasonable and fair-minded jurors in the exercise of impartial judgment would have reached a different conclusion, then the verdict is beyond the authority of the Court to disturb. Id. at 134.
The State asserts that the defendant's claim of self-defense is without merit. There was evidence presented that the defendant shot the victim, placed the victim in the trunk of the defendant's car, drove to a garbage dump, and disposed of the body. There had also been evidence presented that Williams attempted to wash the blood off the carpet of the trunk, disposed of his clothes, traded his car, moved into a hotel, and attempted to store his furniture in a warehouse before he was arrested. The State also presented testimony of eyewitnesses which heard the shooting of the victim and saw Williams place the body in the trunk before leaving the scene of the crime. Furthermore, the written statement of Chelsea Williams was allowed into evidence which alleged that Williams knew the victim was still alive when the victim was placed in the trunk and that Williams said he "... ought to go back and shoot him again to make sure that he was dead."
The defense solicited testimony from a forensic pathologist that the victim had been drinking as well as abusing drugs at the time he was shot. These facts were solicited to show that the defendant could reasonably have been placed in fear for his life. The defendant testified that the victim appeared to be intoxicated and on drugs when he knocked on the door of his apartment loudly demanding his brother's money. The defendant testified that after the victim threatened to kill him, the victim made a gesture as if he were going behind his back, therefore, the defendant shot him to protect himself.
In considering this evidence in the light most consistent with the verdict, we conclude that reasonable and fair-minded jurors in the exercise of their impartial judgment could *24 have found beyond a reasonable doubt that the defendant was guilty. It follows that we will not reverse the judgment based on the sufficiency of the evidence.

f.
The defendant asserts that the refusal of suggested instruction D-16 constituted reversible error on the part of the trial court. A jury instruction may be improper if it incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instruction. Murphy v. State, 566 So.2d 1201, 1206 (Miss. 1990); United States v. Robinson, 700 F.2d 205, 211 (5th Cir.1983), appeal after remand 713 F.2d 110 (5th Cir.1983) reh. denied, 719 F.2d 404 (5th Cir.1983), cert. denied 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984). However, the Mississippi Supreme Court has held that "jury instructions are to be read as a whole and no one instruction is to be taken out of context of the whole." Mackbee v. State, 575 So.2d 16, 34 (Miss. 1990); Jackson v. Griffin, 390 So.2d 287, 290 (Miss. 1980); Alexander v. State, 250 So.2d 629, 632 (Miss. 1971). A court's jury instructions "will not warrant reversal if the jury was fully and fairly instructed by other instructions." Collins v. State, 594 So.2d 29, 35 (Miss. 1992); Laney v. State, 486 So.2d 1242, 1246 (Miss. 1986).
Suggested instruction D-16 states: "[t]he court instructs the jury that every reasonable doubt in reference to any matter connected with this case, which is submitted to the jury for decision, should be resolved by the jury in favor of the defendant and against the state." The defendant cites Hosey v. State, 136 Miss. 5, 100 So. 577 (1924), as authority for his contentions. However, this case is distinguishable from Hosey where this Court ruled that the trial court erroneously permitted the state to switch the burden of proof to the defendant. Id. 100 So. at 578. In reversing the trial court's decision, the Court stated that the burden of proof in a criminal case "always rests upon the state to satisfy the jury by testimony beyond all reasonable doubt of the guilt of the accused." Id. The jury instructions in the present case are in compliance with this well-settled rule.
In giving jury instruction D-7, the trial court stated:
... Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.
Thus, the trial court did fairly instruct the jury as to the State's burden of proof. A court's jury instructions "will not warrant reversal if the jury was fully and fairly instructed by other instructions." Collins v. State, 594 So.2d at 35; Laney v. State, 486 So.2d at 1246.
For the foregoing reasons, Williams' conviction for the charge of manslaughter will be reversed and remanded because the admission of Chelsea Williams' statement constituted a reversible error on the part of the trial court.
REVERSED AND REMANDED.
DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., and McRAE, J., concur.
JAMES L. ROBERTS, Jr., J., dissents with separate written opinion joined by PITTMAN, SMITH and MILLS, JJ.
ROBERTS, Justice, dissenting:
I find no reversible error by the trial court leading to the conviction of Leroy Christopher Williams for manslaughter, and I respectfully dissent.
I am in disagreement with the majority's decision that the admission of Chelsea's police station statement was in error. I believe that it was properly admitted pursuant to Mississippi Rule of Evidence 804(b)(3) and find that it does not constitute reversible error.
The majority intimates that Chelsea could not have been charged with Leroy Chris Williams (hereinafter Chris) as an accessory after-the-fact to the killing of "Knuckles" or to any other crime involving this incident. The State certainly could have chosen to *25 prosecute Chelsea, probably as an accessory, if it so desired. The mere fact that the district attorney's office chooses to prosecute is not a guarantee of a finding of guilt. As has always been the case, the local prosecutor's office has the discretion to bring charges against an individual so long as there is substantial credible evidence to do so limited by an arbitrary and capricious standard. It appears sufficient credible evidence existed for the state to consider and/or pursue such charges against Chelsea.
The statement involved, yet not specifically mentioned in the majority, is as follows in pertinent excerpts.
.... [t]here was a knock on the door.... [C]hris went to the door. About four or five minutes after Chris went to the door I heard a gun shot.... [S]hortly after the gun shot, Chris came running upstairs and handed me his pistol and said for me to hold the gun. I took the gun and put it under the mattress... . [H]e said, "come here, hurry up!" So I ran downstairs... . [I] saw Knuckles laying in the street near the car and I asked Chris if he was going to take Knuckles to the hospital and he did not say anything. He hollered for me to come and hold the trunk up and I asked him why he did not put Knuckles inside the car. Chris told me that he did not want to get blood all over the inside of the car. So I held the trunk lid up and Chris threw Knuckles inside of the trunk... . [I] asked Chris where he had been. I asked him if he took Knuckles to the hospital and he said "No". He said he took him and dumped him where they dump garbage somewhere. He said that Knuckles was still alive and that he ought to go back and shoot him again to make sure that he was dead. I knew that Knuckles was still alive when Chris put Knuckles in the trunk because I could hear Knuckles snoring.... [C]hris told me when he ran back upstairs after dumping Knuckles he told me to get some pants, shirt, and undershorts.
I believe that the trial court was correct in finding that the above statement, "itself would leave one to conclude that it is in fact contrary to the interest of the maker of the statement; and if that test is sufficiently met, the statement ought to be admissible and that the State ought to be able to use that statement in the trial of this case."
I agree with the majority that Chelsea was "unavailable" within the meaning of Mississippi Rule of Evidence 804(a)(1). However, I find that the argument could be made that the foregoing statement, even though subject to varying interpretations, when made by Chelsea was against her penal interest and thus properly admissible pursuant to Mississippi Rule of Evidence 804(b)(3) as decided by the trial judge. Since there appears to be no other error(s) warranting reversal, I would affirm.
PITTMAN, SMITH and MILLS, JJ., join this opinion.
NOTES
[1] Our rule is identical to its federal counter part in the Federal Rules of Evidence and we, therefore, look to federal decisions as informative, though not controlling, as to the proper interpretation. See Brent v. State, 632 So.2d 936, 943 (Miss. 1994).